No. 06-14-00013B-CR

# ORIGINAL
## IN THE
## Court of Appeals
Sixth Appellate District of Texas
AT TEXARKANA

RECEIVED IN
The Court of Appeals
Sixth District

MAR 0 4 2015

Texarkana, Texas
Debra Autrey, Clerk

FILED IN
The Court of Appeals
Sixth District

MAR 0 4 2015

Texarkana, Texas
Debra K. Autrey, Clerk

JAMIE LEE BLEDSOE,                VS                APPELLANT

STATE OF TEXAS                                      APPELLEE

APPEAL FROM THE 71st District Court
OF HARRISON COUNTY, TEXAS

APPELLANT's PRO-SE BRIEF
IN RESPONSE TO ATTORNEY's ANDERS BRIEF

Filed IN Propria Persona

JAMIE LEE BLEDSOE

ORAL ARGUMENT Requested

# IDENITY OF PARTIES AND COUNSEL

Pursuant to Texas Rule of Appellate Procedure 38.1.(a), the following list is a Complete List of all Parties to the trial Court's Judgment and the names and addresses of all trial and appellate Counsel:

(1) Plaintiff, Appellee
    State of Texas

(2) Defendant, Appellant
    Jamie Lee Bledsoe

(3) Defendant's trial Counsel
    CHERYL A. Cooper SAMMONs
    ATTORNEY at Law
    110 S. Bolivar Suite 214
    P.O. Box 1127
    Marshall, TX 75671

(4) Defendant's trial Counsel
    Jamie Lee Bledsoe: Self representation
    P.o. Drawer R
    Marshall, TX 75670

(5) Appointed Appellate Counsel
    ATTORNEY AT LAW EBB. Mobely
    P.O. Box 2309
    LONGVIEW, TEXAS 75606-2309

(6) State's trial and appellate Counsel
    SHAWN CONNALLY
    Harrison County District ATTORNEY
    P.o. Box 776
    Marshall, Texas 75671-0776

(Page 1)

# TABLE OF CONTENTS

. Identify of Parties and Counsel ...........,,Page 1

TABLE of Contents .......................Page 2

INdex of Authorities .....................3, 4, 5,

STATEment of the Case ...................6

STATEMent of Oral ARgument...............7

Issues Presented ....................... 8-27-42

Summary of The Argument..................27-42-B-17

STATE ment of facts.....................42,55-13-17

ARgu ment.............................17-26-56-59

ISSUE NO: 1. THE enhancement Paragraph on Cause NO. O8: 0177X was illegal, and VOid and was VioLative of the Double JeoPardy Provision of the United State. Constitution and the Constitution of the State of Texas.

ISSUE NO: 2. Conviction obtained by use of evidence gained Pursuant to an unconstitutial Search and Seizure (where the State has Not Provided a full and fair Hearing on the merits of the fourth Amendment claim

ISSUE No: 3. The trial court err in denying the defendant motion to Suppress evidence recovered from Room 108 of motel 6

(Page 2)

# Index of Authorities

CAMPbell V. State
    49 S.W. 3d at 875 (Tex. Cr. App. 2001.) .............. 7/22-23 Page's

CARMouche V. State
    10 S.W. 3d at 323, 33 (Tex. Crim. App. 2000) ........... 256

EX Parte McIver
    586 S.W. 2d at 88 (Tex. Crim. App. 1979) .......... 25

EX Parte Seidel
    39 S.W. 3d 221, 225 (Tex. Crim. App. 2000) ........ 43

Fowler V. State
    9 Tex. APP 149 (9 Tex. Crim. 149 1880) ......... 25

Franks V. Delaware,
    (438, U.S. 154 1978 .......... 55

Graves V. State
    307 S.W. 3d 483, 489 (Tex. App. Texarkana 2010) ....... 56

Gunzman V. State
    955 S.W. 2d 85 (Tex. Crim. App. 1997) ........ 49/56

Harris V. State
    227 S.W. 3d 83 (Tex. Crim. App. 2007) ........ 55

Health V. State
    817 S.W. 2d 335 (Tex. Crim. App 1991) ...... 24

Harlow V. Fitzgerald
    457 U.S. 800, 818 ( ) ...... 57

Johnson V. State
    43 S.W. 3d 1, 4 (Tex. Crim App. 2001) ...... 25

King V. State
    953 S.W. 2d 266 (Tex. Crim. App. 1997) ....... 25

Mapp V. Ohio,
    ( 367 U.S. 643 1961) ..... 58

Massachusetts V. Sheppard
    ( 468 U.S. 981, 988-1984) ._ 57

McDonald V. United State
    ( 335 U.S. 451, 455 1948) ... 57

Montanez V. State,
    195 S.W. 3d 242 (Tex. Crim. App. 2006) ... 39

(Page 3)

ORRIN Wait v. State
56 S.W. 3d 894    ( Tex. App. fort worth 2001 .... 7/10/21 1

Roger v. State
291 S.W. 3d 148, 151   ( Tex. App. Texarkana 2009) ..... 96

Schutz v. State
63 S.W. 3d 442. 444   ( Tex. Crim App. 2001) ..... 25

State v. Ballard
987 S.W. 2d 889. 891 ( Tex. Crim App. 1999] .... 39

Reasor v State
12 S.W. 3d 813. 818 ( Tex. Crim App. 2000) .... 39

Schneckluthu Busta Montes    ( 412 U.S 218. 219. 93 S.ct .... 39
2041, 36, L. E.d. 2d 854

State ex rel vance v. Hatten    ( 600 S.W. 2d 828 App. 2.000 .... 24

State ex rel curry v Gray
599 S.W. 2d 630   ( Tex Crim, App. 1980 ..... 25

State v. Ibarra
953 S.W. 2d 242. 243 ( Tex. Crim. App. 1997] .... 39

State v. Rose
32 S.W. 3d 853, 856-57 ( Tex Crim. App. 2000) .... 39

State v. Webb
12 S.W. 3d 808    ( Tex. Crim. App 2000 .... 7/17

State v. White
959 S.W. 2d 373    ( Tex. Crim. App. fort worth.]... 19

Villarreal v State
935 S.W. 2d 134. 138    ( Tex. Crim. App. 1996 )... 56

Young v. State
420 S.W. 3d 88. 856-57   ( Tex. Crim. App. 2010] ... 56

Ex Parte Peña 71
    71 S.W. 3d 336    (Tex. C.R. App. 2001.) ........ 24

Ex Parte Mizell
    119. S.W. 3d 804.806 ( Tex Crim App 2003) ....... 24

Brumit v. State
    206 S.W. 3d 639 ( Tex. Crim. App. 2006) ...... 24

Marin v. State
    851 S.W. 2d 275 ( Tex. Crim. App 1993) ....... 24

Wilson v. State
    677 S.W. 2d 518 ( Tex. Crim. App. 1991) ...... 25

Levy v. State
    818 S.W. 2d 801 ( Tex. Crim. App. 1991) ...... 23

Johnson v. State
    967 S.W. 2d 410. ( Tex. Crim. App. 1998. ...... 25

Ex Parte Beck.
    922 S.W. 2d 181,182 ( Tex. Crim. App 1996 ...... 24

State V. Webb
    12 S.W. 3d. 808, 811 ( Tex. Crim. App. 2001) ...... 17

STATUTES / RULES:                                                    Page's

Tex. Pen Code Ann. 12.35(a) (West 2011) ................7-22

Tex. Pen Code Ann. 12.42(a) (West 2011) ........... 7-22

Tex. Pen Code Ann. 12.42(d) (West 2011) .........7-22

Tex. Pen Code Ann. 12.425 (West 2011) ........7-22

Tex. Pen Code Ann. 12.425(b) (West 2011) ........7-22

Tex. Pen Code Ann 12.42.(a)(2) (West 2011) ...........7-22

Tex. Pen Code Ann 12.35(c) (West 2011) ..........7-22

Tex. Pen Code Ann 12.42(e) (West 2011) ...........7-22

Tex. R. App. P. 33                     .........23

Criminal Code Procedure 18.01          .......4/53


CONSTITUTIONAL Provisions:

Fourth Amendment ..............................55

Fifth Amendment .........................
Article I, Section 9 ....................... 38

Texas Rules of Evidence 901 902. ...............27

Legislature Repeal / Enactment
Acts 2011, 82nd Les., ch 834  H.B. 3384........7/10/14
5, effective September 1. 2011,

Repealed  12.42 (a) (2)     12.42 (e)

Enacted  12.425     12.425(b)

# STATEMENT OF THE CASE

**Nature of Case:** This is an appeal from a conviction for Burglary of a Building Pursuant to Texas Penal Code 30.02 a State Jail felony

C R. Pg 228

**Judge/Court:** Judge Brad Morin, 71st District Court of Harrison County, Texas

**Plea:** Jamie Lee (Bledsoe) entered a Plea of "Not guilty"

**Trial disposition:** The Case was tried to a Jury which found Bledsoe "guilty" of the offence of burglary of a building; a State Jail felony

The Jury recommend a 20 year sentence with the Prior Conviction

C R. Pg-224

(Page 8)

# STATEMENT OF ORAL ARGUMENT

Oral argument will assist this court with the question of law and facts concerning the State's illegal use of a Previous conviction of a State Jail felony along with a non State Jail felony to enhance a current State Jail felony to a Second degree.

## Question of Law and fact

Do the Texas Penal Code that was enacted by the Legistature in Section 12.42 (a) (2) 12.42(d) 12.425 b Permit a Prior State Jail felony to be Joined with another Prior NON State Jail felony to enhance a non-aggravated state Jail felony to the Level of a Second degree felony.

## Law

Penal Code 12.42 (a) (2) was repealed by act 2011 82nd Leg., ch 834 H.B. 3384. and enacted by 12.425 (b) Under act 2011, 82nd Leg., ch. 834 H.B. 3384.

## FACT

Penal Code 12.425(b) Specificity States two felonies, ("other") than a State Jail felony Punishable Under 12.35 (a)

The State erroneously used Cause NO: D8;D117X a State Jail felony Punishable Under 12.35(a) that was Previously enhanced Under 12.425(b) that was enacted from 12.42 (a) (2) and used it's character Under their misinterPret of the Laws & facts. (See volume 6 of 7 Pg. (22)(23)(24)(25))

### See

State v. white, 959 S.W. 2d 375 (Tex. APP. fort worth, 1988)
State v. Webb, 12 S.W. 3d 808-811 (Tex. Crim. APP. 2000
Waits v. State, 56 S.W. 3d 56 (Tex. APP. - fort worth, 2001,
Campbell v. State, 49 S.W. 3d 875 (Tex. APP- 2001

(Page 7)

# ISSUES PRESENTED

ISSUE#1: THE enhancement Paragraph on Cause No: 08:0177X was illegal, and void, and was Violative of the Double Jeopardy Provision of the United States Constitution and the constitution of the State of Texas.

ISSUE# 2 Conviction obtained by use of evidence gained Pursuant to an unconstitutial Search and seizure ( where the State has not Provided a full and fair Hearing on the merits of the fourth Amendment claim.

ISSUE# 3 The trial Court err in denying the defendants motion to suppress evidence recovered from Room 108 of motel 6

# Discussion
## Multiple Use of Prior Convictions

There are restrictions on multiple use of individual Prior Convictions for enhancement.

While the same Prior Conviction may be used for enhancement in different Prosecutions, that Particular Prior Conviction Cannot be used multiple times in an individual Case to both raise the offense Level and to additionally enhance Punishment for that increased offense.

\* Certain Statutes also have remoteness Provisions and a Single Conviction Cannot be used both to demonstrate another Conviction is not too remote and for another enhancement Purpose.

The rule against multiple use also applies if the Prior Convictions are Part of the elements demonstrating the object offense.

\* Essentially, if an individual Prior Conviction is employed to show an allegation that must be Specifically Pled and Proved for any enhancement Purpose, then that same Conviction may not be used again in that Prosecution.

The fact that a given Conviction was used in a Separate Previous Prosecution to raise an offense level does Not disqualify its use in the new Case as long as each Single Conviction is used only for one Purpose.

Different rules govern enhancement of State Jail felonies and general felony enhancement.

The court of Criminal Appeals has recognized the term State Jail felony? has a different meaning than the term ?felony? used in the general enhancement Statute.

This means that Particular Class of Prior Convictions is limited to either State Jail felonies or ordinary felonies, dePending on the text of the governing Statute.

\* <u>Prior Convictions for non-aggravated State Jail felonies can not be used to enhance other felonies.</u>

See State v. Webb, 12 S.w. 3d 808, 811 (Tex. Crim. App. 2000). (enhancement under sec. 12.42 and 12.425 apply ? to the offense tried? So even if a state Jail Punishment was enhanced to a Second-degree felony under sec 12.35 (a) the case for which he was convicted was still a state Jail felony).

(Page 9)

The Statute as written also does not impose an increased Punishment for offenders who have two
* Previous Convictions in the the form of both a <u>Single Prior State Jail felony</u> and a <u>Single Prior non-state</u> Jail felony.

If such lack of enhancement in either case is in fact an oversight in the Statute, it is the business of the Legislature, rather than the Court, to correct it.

The enactment of <u>Sec 12.42 (5)</u> makes it clear that A Previous Conviction for a State Jail felony Punishable Under Section <u>12.35 (a)</u> may not be used for enhancement Purpose Under Subdivision (2). Also the enactment of Penal Code 12.425

The enactment by Acts 2011. 82nd Leg., ch. 834 (H.B. 3384 S, effective September 1. 2011.) Under Penal Code Section <u>12.425 (b)</u> and (c) makes it clear felonies Other than State Jail felony's Punishable Under <u>12.35 (a)</u>. (Subdivision (2) Penal Code 12.425

Bledsoe was enhanced Under Penal Code <u>12.425 (b)</u> with the use of a Single Prior State Jail felony's with a Single Prior NON-State Jail felony to the equivalent of a Second degree

The Court of Criminal Appeals reverses the case on Waits v. State, Cite as 56 S.W. 3d 899 (Tex. App. fort worth 2001. and held that Prior State Jail felony Conviction could not be used. With Prior felony conviction to enhance defendant Sentence.

The Court erred in Submitting a Punishment Charge which Permitted the Jury to sentence Bledsoe for a second-degree felony. by the use of Cause NO: 08:0177x

## ISSUE NUMBER ONE

The enhancement Paragraph on Cause NO: 08:0177X was illegal. And VOID and was violative of the Double Jeopardy Provision of the united States Constitution and the Constitution of the State of TEXAS.

### SUMMARY OF THE ARGUMENT

The Punishment Charge included a Second degree Punishment range by the State using Cause NO: 08:0177X a Previous State Jail felony that was alleged for enhancement in the State Notice of Intent to Seek enhanced Punishment [C.R. Pg 138]

Bledsoe incorrectly received a Second degree felony Punishment ranged based upon Texas Penal Code 12.425(b) rather than the Correct State Jail felony Punishment range based upon Texas Penal Code 12.35(a)

### CHARGE ON PUNISHMENT

LADIES AND GENTLEmen OF the Jury:

By your verdict returned in this case you have found the defendant guilty of the offense charged in the indictment namely, Burglary of a Building, Which was alleged to have happen on or about the 15th day of July 2012, in Harrison Co, TX. This offense is a State Jail felony   CR Pg. 208

The charge further alleges thereof that Prior to the commission of the offense of Burglary of a building for which you returned a verdict herein, the defendant was two times duly and Legally convicted of a felony, namely, "Possession of a Controlled Substance" in the 71st district Court of Harrison Co, Texas in Cause NO: 99-0124X, on the 8th day of february 2001.

(Page 11)

And "Burglary of a Building" in the 71st Judicial District Court of Harrison County, Texas in Cause Number 08-0177x, styled "The State of Texas vs. Jamie Lee Bledsoe" on the 26th day of January, 2009.

To these allegations the defendant has pleaded "NOT TRUE". C.R. - Pg 208.

The Jury found the allegations alleged by the court to be true and Punished Bledsoe to 201 Years T.DC.J. C.R. Pg 224.

(Page 12)

# STATEMENT OF FACTS

## PUNISHMENT .......... PHASE

<u>MR. Bledsoe</u>: I object to that Cause no. 08-177X. and I object to the 99-0124, as illegal sentences. V. 5-RR-Line 9-10

I got Case Law here, Judge, that will show you that Under 12.35 (a) the State was Prohibited from using that Cause Number to enhance me on, because it was a State Jail felony and it could not be used to enhance. V. 6-RR P9-14 Line 11-14

<u>The court</u>: So you are saying in the Judgment that they used where it has Second degree felony because it was enhanced due to two Prior that they could not use that at all. Is that your Position?

<u>MR. Bledsoe</u>: That is what I am saying, That is Correct I have Case Law to back that up. V-6-RR-P9-14-Line 11-14

<u>MR. Bledsoe</u>: The State misinterpreted the words that is written in 12.425 (b) where it says other than a State Jail felony Punishable Under 12.35 (a)

V- 6-RR-P9-15-Line 14-17

<u>MR. Bledsoe</u>: I am basically trying to argue Cause Number 08-177X as being illegal. V. 6-RR- P9-21- 10-11

<u>Prosecution</u>: It sounds to me Like MR. Bledsoe is arguing that Under Section 12.425(b) where felonies for repeat habitual offenders on trial for State Jail felony, it seems to me that he is trying to argue is because one of the Priors used to be a State Jail felony that was enhanced to a Second degree felony to which he Pled it Can no Longer be used to enhance him. when the Law is clear it is not that way at all. once that State Jail felony was enhanced to a Second degree it is no longer a State Jail felony Under Section, I believe, 12.35 (a).

It now becomes a Second degree felony, which is now used as a second degree felony along with another felony to enhance the State Jail felony. V. 6-RR-P9-22 Line 8-21

(Page 13)

• MR Bledsoe: Prosecution says that he explained it to you under 12.35(a) Do he have any Case Law to represent that? V. 6-22-23

Prosecution: Judge, in conclusion, once a felony is enhanced from a state Jail to a second degree it loses it's character of being a state Jail felony under 12.35(a). the next time a defendant commits a state Jail felony they can use that second degree felony he plead to and was convicted of to enhance his current state Jail felony as if that case had been a second degree felony. That is the whole Purpose of the statute. V. 6-RR- Pg. 24-25-

## ANALYSIS

This is a case of first impression in which this court must determine the correct interpretation and application of Section 12.35(a) 12.42(a)(2), 12.42(d) and 12.425(b) of the Penal Code.

Because of the repeated misinterpretation by the State concerning the above Sections, the Legislature repealed 12.42(a)(2) 12.42(e) and (Enacted Sec 12.425 by Acts 2011, 82nd Leg., 834 (H.B. 3384). 5. effective September 1, 2011.)

In the New enactment on Sec. 12.42, Penalties for Repeat and Habitual Felony offenders on Trial. for first, second, or Third Degree felony, they specificity state in Sec12.42. (a) (b) (c) and (d) Punishment can be increased with felony's Other than a state Jail felony Punishable Under Section 12.35(a)

In the New enactment on Section 12.425 it outline the Penalties for Repeat and Habitual Felony offender on trial for State Jail felony.

12.425 (a) If it is Shown on the trial of a State Jail felony Punishable Under Section 12.35(a) that the defendant has Previously been finally Convicted of two State Jail felonies Punishable Under Section 12.35(a), on Conviction the defendant shall be Punished for a felony of the third degree.

(Page 14)

Sec. 12.425(b) If it is shown on the trial of a state jail felony Punishable Under Section 12.35(a) that the defendant has Previously been finally convicted of two felonies Other than a state jail felony Punishable under Section 12.35(a), and the Second Previous felony Conviction is for an offense that occurred subsequent to the first Previous conviction having become final, on Conviction the defendant shall be Punished for a felony of the Second degree.

Bledsoe was Punished Pursuant to Section 12.425(b) with a Previous State jail felony Punishable Under 12.35(a) The State disregarded the Language Set out in the Section that Specificity exclude State jail felonie's Punishable Under Section 12.35(a).

The State Created there owns interpretation of the words "Punishable Under" as used threw out the Language of 12.42(a) 12.42(d) and Now enacted 12.425b that Specificity State's felonie's Other than State jail felonie's "Punishable Under" 12.35(a).

The State asserts that the Phase "Punishable Under" as used throughout 12.42(a) 12.42(d) and 12.425 b and (c) refers to the Specific Provision Providing the range of Punishment Under which the defendant's Sentence is assessed, that is, althoush Bledsoe was tried and Convicted of a State jail felony on Cause NO. 08.0177X "Punishable Under 12.35(a)." Once his conviction was enhanced Pursuant to 12.425(b), it was no longer "Punishable Under 12.35(a)," but instead "Punishable Under 12.425(b)." As Such the State asserts that 12.425(b) allows for further enhancement, with the requisite felony offenses (See V-6-R-R-P9-24-25

However, this interPretation isolates the words "Punishable Unles" from their Context, and fails to differentiate between an enhanced offense, and an enhanced Punishment. Section 12.425(b) refers Specifically to " the trial of a felony offense Other than a State jail felony Punishable Under Section 12.35(a)." [ EMPhasis added.], Thus, the enhancement is applied with reference to the Offense tried, in the instant Case,

(Page 15)

Bledsoe was tried for a non-aggravated state jail felony, i.e., a state jail felony punishable under 12.35(a). Following his conviction, his punishment was then enhanced, pursuant to 12.425(b) to the equivalent of a second degree felony, with the use of the previous state jail felony on cause no. 08-D177X that was a state jail felony punishable under 12.35(a) that was previous enhanced.

Regardless of the enhancement Bledsoe was tried for a state jail felony punishable under 12.35(a); that his punishment, as opposed to the offense itself, was then subject to enhancement does not change that fact. As such 12.425(b) is not applicable to Bledsoe.

The Level of specificity set out in these statutes suggests that the "multiple enhancement" that the state assents is not authorized.

The State's contention that an offense that can be enhanced under 12.425(a) or 12.425(b) is no longer "punishable" under 12.35(a)" and so can be enhanced under 12.425(a) and (b) is a possible interpretation of the statutory language but is not the most reasonable or likely interpretation. [See V.6-RR-Pg. 24-25-Line 1-6]

All relevant enhancement provisions in 12.425 refer to the "trial of" a felony offense that is punishable or not punishable under 12.35(a).

There is some incongruity in saying that a proceeding is the trial of a 12.35(a) offense for some purpose, but not for other purposes, especially when the provisions involved operate at the same stage of trial and are found within the same statutory section.

There is no indication in the statutory language that the Legislature intended to authorize the stacking of enhancement under 12.425; rather, the language and structure of the statute suggests that the subsections are alternative enhancement provisions.

# CASE LAW / AUTHORY

To support Bledsoe's contention he cite the case of *State v. Webb* cite as 12. S.W. 3d 808. Webb" was Convicted of Possession of a Controlled substance, a non-aggravated state Jail felony, his Punishment was enhanced to the Punishment range for a Second-degree felonie Pursuant to Tex. Penal Code ANN. 12.42(a)(2). (repealed), (Enacted to 12.425(b)

The trial Court held that appellee's Punishment could not be further enhanced to a term between 25 and 99 years under 12.42(d), the habitual felony offender statute, and sentenced appellee to 20 years Confinement.

The court affirmed and held that 12.42(d). which allowed for enhanced Punishment of an aggravated state Jail felony. i.e., a Second-degree felony, was not applicable to appellee because he was tried for a State Jail felony Punishable under 12.35(a).

Appellee Harvey Lee Webb was Convicted on two count. of Possession of a Controlled substance, a non-aggravated state Jail felony. Tex. Pen. Code 12.35(a)

The indictment Contained two enhancement Paragraphs.

The first alleged two sequential Prior felonies, which would increase the Punishment range to that of a Second-degree felony see Tex Penal Code 12.42(a)(2) that was repealed and Now enacted to 12.425(b).

The second enhancement Paragraph alleged two additional sequential Prior felonies. The state argues that under Tex. Pen. Code 12.42(d) (Vernon Supp. 1999), known as the "Habitual felony offender" statute. the Punishment could be further enhanced to a term between twenty-five and ninety-nine years.

The trial Court found the Priors listed in the enhancement Paragraphs to be true. However, it ruled that while the Primary state Jail felony could be Properly enhanced under 12.42 (a)(2), it could not be further enhanced under 12.42(d) Pursuant to 12.42 (a)(2). The court held that the Legislature had intended to exclude state Jail felonies Punishable Under 12.35 (a) and Subject to enhancement under 12.42 (a)(2), from the class of felony offenses that fall under 12.42(d).

Based on white, Cite as 959 S.W. 2d 373 ( Tex. crim. APP. fort worth 1988. the Court Of appeals held that in the instant Case, the trial Court Correctly determine that Webb's enhanced State Jail felony Conviction was not Subject to further enhancement.

12.42 (d) refers SPecifically to " the trial of a felony offense other than a state Jail felony" "Punishable Under 12.35(a) Therefore the State was Prohibit from Using his Previous enhanced State Jail felony that was enhanced to a Second degree Under Penal Code 12.42(a)(2) Now enacted to 12.425(b).

The same Law that was enacted Under Section 12.42(d) in Webb "Supra" that SPecifically mandate that Other then a State Jail felony Punishable Under 12.35 (a), is the Same Law that mandate's 12.425(b) in Bledsoe Case which SPecifically Say Other than a State Jail felony Punishable Under 12.35(a).

The Harrison Co Court has Created there Owns Law Concerning the interPretation of Penal Code 12.425, 12.425(b), and 12.35(a), as Stated in the Reporter Record. Listed as Volume 2 of 7 Pg. 22-25

The trial Court ERRed in over ruling appellate motion for a New trial; And ERR for allowing appellate to be Punished with an Unauthorized Conviction.

(Page 18)

Bledsoe Cite the Case of _State v. White_ Cite as 959 S.W. 2d 375 (Tex-App- Fort- Worth 1998)

White was arrested for Possession of Cocaine and subsequently indicted on June 13, 1986 for Possession of less than one gram of Cocain, a State Jail felony Punishable under Section 12.35(a) of the Texas Penal Code.

White's indictment also contained an enhancement Paragraph under Section 12.42 (a)(2) of the Texas Penal Code in which it was alleged that White had been Previously convicted of two felony offenses: Specifically, burglary of a vehicle in 1990 and delivery of Cocain in 1988.

Additionally, the indictment contained a habitual offender Paragraph under Section 12.42(d) of the Texas Penal Code based on two different and separate felony offenses: Namely, burglary of another vehicle in 1990 and felony theft in 1988.

After a hearing on White's Pretrial motion to dismiss the habitual offender Paragraph, the trial court quashed the Paragraph.

In White's Sole Point, the State contends that State Jail felonies enhanced under Section 12.42 (a)(2) are subject to further enhancement under the habitual offender Provision of Section 12.42(d).

The Premise of the State's argument is that once a State Jail felony is enhanced Pursuant to Section 12.42(a) it is no longer "a state Jail felony Punishable under Section 12.35 (a)," and therefore, Punishment for the felony may be further enhanced under the habitual offender Provision of Section 12.42(d). because it Constitutes "a felony offense other than a state Jail felony Punishable under Section 12.35 (a)."

However, the state asserts that the felony in this case is not a felony Punishable under Section 12.35 (a), but rather

"a felony punishable under [Section] 12.42 (a)(2)." The Court quoted" The absurdity of this doubles-peak and consequent result is lost on the court. The court go on to say that the state jail felony for which white is charged. is, without question, "a State jail felony Punishable under Section 12.35 (a)."

As a result, the habitual offender Provision of Section 12.42d is inapplicable on its face because it expressly excludes from its application state jail felonies Punishable Under Section 12.35 (a). See TEX. PENAL CODE ANN. 12.42(d) [statute applies to felony offenses "other than a state jail felony Punishable Under Section 12.35 (a)"].

The Court held that the Legislature intended to exclude state jail felonies Punishable Under Section 12.35(a). and subject to enhancement under Section 12.42 (a)(2). from the Class of felony offenses that fall under the habitual offender Provisions of Section 12.42 (d).

Bledsoe Cite the Case of WAITS v. State Cite as 56 S.w. 3d 894 ( Tex. APP- fort worth 2001).

Waits was Charged with Possession of Less than one gram of Cocain, a State Jail felony.

The Punishment for a State Jail felony Cannot exceed two Year's confinement. Tex. PENAL CODE ANN 12.35 (a)

The offense was enhanced to a Second degree felony by Prior Convictions for Possession of Less than

\* one gram of Cocaine (a State Jail felony) and Possession of less than twenty eight grams of Cocain (a felony).

According to the Penal Code, State Jail felonies Punishable Under 12.35(a) Can be enhanced to third degree felonies by Proof of two Prior unaggravated State Jail felony Convictions or enhanced to Second degree felonies upon Proof of two Prior sequential felony Conviction. TeX. PENAL CODE ANN. 12. 42 (a) (1), (2) (Vernon Supp. 2001).

Wait Complains that the trial Court erred by using his Prior State Jail felony Conviction to enhance his Punishment.

APPellant argues that Under Section 12.42 (a)(2) of the Penal Code "felony" does Not include State Jail felonies and therefore it was error for the trial Court to Use a Prior State Jail felony Conviction to elevate his Punishment to a Second degree felony.

\* The State used a Single Prior unaggravated State Jail felony, and a single Prior felony to enhance Waits Punishment to a second degree.

The Statute "does not impose an increased Punishment for offenders who have two Previous Convictions in the form of both a single Prior State Jail felony and a single Prior non-State Jail Felony." Id at 878.

The Court of Criminal APPeals reversed on 46. S.w. 3d 888, and held that Prior State Jail felony Conviction Could not be used, with Prior felony Conviction to enhance defendant Sentence.

(Page 21)

Bledsoe cite the case of CAMPBELL v. State cite as 49 S.W. 3d 874 (Tex. Crim. App. 2001).

CAMPBELL was convicted by a jury of the offense of Possession of less than one gram of Cocaine with the intent to deliver, an unaggravated State Jail felony Punishable under 12.35(a) of the TEXAS Penal Code. See Tex. HEALTH & SAFETY CODE 481.112(a), (b).

After appellant Pled true to allegations of two Prior State Jail felony Convictions, the Jury assessed Punishment at eight years Confinement in the Texas Department of Criminal Justice Institutional Division.

On appeal, appellant complained that the trial Court erred by instructing the Jury that, Under Subsection 12.42(a) of the Texas Penal Code, the range of Punishment for an Unaggravated State Jail felony Punishable Under Subsection 12.35(a) with two Prior Sequential State Jail felony Conviction is two to twenty years Confinement, a Second-degree felony.

* The en banc Court of Criminal Appeals, Johnson J., held that Under habitual Offender Punishment Statute, offender who Commits only Unaggravated State Jail felonies Cannot face enhancement beyond third-degree felony.

"Felonies" as used in Portion of habitual Offender Punishment Statute requiring Second degree felony Punishment upon Conviction

* of State Jail felony with two Prior Consecutive "felonies" does not include State Jail felonies; thus, offender who Commits only Unaggravated State Jail felonies will Never face enhancement beyond third-degree felony. V.T.C.A. Penal Code 12.42(a)(1)(2).

the Court hold that, as used in Subsection 12.42(a), now enacted to 12.425(a), the terms "felony" and "State Jail felony" are mutually exclusive; a defendant Charged Under Subsection 12.35(a) who has Previously acquired only State Jail felony Conviction, whether sequential or Non-sequential, must be Punished for a third-degree felony Under Subsection 12.42(a)(1), rather than a second-degree felony Under Subsection 12.42(a)(2).

Finally, the Court Note the lack of a Provision in the Current Statute for enhancement for an offender Under Subsection 12.35(a) who has two Previous Non-sequential, Unaggravated Non-State Jail felony Conviction.

(Page 22)

Therefore, in light of Campbell, "Supra" it was error for the trial court to use the Prior Unaggravated State Jail felony Conviction on Cause no. 08:0177X to re-enhance Bledsoe Punishment to another second degree felony by use of a NON-aggravated state Jail felony conviction.

Bledsoe, sentence was not authorized by law and thus it is void, See Levy v. State, 818 S.W. 2d 801, 802 (Tex. Crim. App, 1991).

Bledsoe asserts that the language that the Legisature set out in there opinion in Webb "supra", and White "supra" under Penal Code Section 12.42(d) is the same language the Legisature enacted in Penal Code Section 12.425(b) Which refers specifically to "the trial of a felony offense other than a State Jail felony Punishable under Section 12.35(a)." The State Jail felony for which Bledsoe was charged and Convicted of is, without question, "a State Jail felony Punishable under Section 12.35(a)." as a result, the repeat and habitual Offender Provision of Penal Code Section 12.425(b) is inapplicable on its face because it expressly excludes from its application State Jail felonies Punishable under Section 2.35(a). (See Cause no. 08.0177X)

The court erred in Submitting a Punishment Charge Which Permitted the Jury to Sentence Bledsoe for a Second degree felony by Use of a Unauthorized Conviction.

### Preservation of Error.

To Preserve a complaint for appellate review, a Party must generally have Presented to the trial court a timely request, Objection, or motion that States the Specific grounds for the desired ruling, if they are Not apparent from the context of the request, Objection or motion, See Tex. R. App. P. 33.1(a).

(Page 23)

Howere, error which is based upon an absolute right or Prohibition need not be Preserved. Marin v. State, 851 S.W. 2d 275 Tex. Crim. App. 1993) discussing three types of rights); See also Garcia v. State, 149 S.W. 3d 135, 144 (Tex. Crim. App. 2004 such error is often called fundamental error. See e.g. Brumit v. State, 206 S.W. 3d 639 Tex. Crim A.Pp. 2006.

A "void" or "illegal" Sentence is one that is not authorized by Law. Exparte Pena, 71 S.W. 3d 336, 332 N. 2 ( Tex. Crim. App 2002/ . Ex Parte Mizell v. State, 119 S.W. 3d 804, 806 (Tex. Crim. App. 2003)

("A Sentence that is outside the maximum or minimum range of Punishment is unauthorized by Law and therefore illegal."); Ex Parte Beck, 922 S.W. 2d 181, 182 ( Tex. Crim. App. 1996 Per Curiam)

(sentence of twenty - five years imprisonment for offense for which maximum range of Punishment was two years' imPrison ment was illegal.

Such a "void" or "illegal" Sentence is fundamental error and can be raised at any time. Ex Parte Beck, 922 S.W. 2d 181, 182 (Tex. Crim. App. 1996) Per Curiam).

STAndard of Review

Whether a Sentence is void or illegal appears to be a Question of Law reviewed de novo, See e.g. Heath vs State 817 S.W. 2d 335 (Tex. Crim. App. 1991).

The Texas Court of Criminal Appeals of TEXAS has uniformly held that an order or Judgment inflicting Punishment not authorized is void. State ex rel. vance v. Halten, 600 S.W. 2d 828 (Tex. Crim. App. 1980).

(Page 24)

State ex rel. Curry v. Gray, 599 S.W. 2d 630 (Tex. Crim. App. 1980); Ex Parte McIver, 586 S.W. 2d 851 (Tex. Crim. App. 1979) Ex Parte McIver, 586 SW 2d 851 (Tex. Cr. App. 1979.

Sentences not authorized by Law are void. Wilson v. State, 677 S.W. 2d 518 (Tex. Cr. App. 1984. This has been the Law in Texas for over a century. Fowler v. State, 9 Tex. App. 149 [9 Tex. Crim. 149] [9 Tex. Crim. 149] (1880).

## Harmful Error

An error must affect the substantial rights of the accused to be harmful.

See Tex. R. App. P. 44. 2 (b). A "substantial right" is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. King v. State, 953 S.W. 2d 266 (Tex. Crim. App. 1997) (citing Tex. R. App. P. 44. 2 (b)).

Alternatively, error is harmless if the error "did not influence the jury, or had but a slight effect." Johnson v. State, 967 S.W. 2d 410, 417 (Tex. Crim. App. 1998).

The Appellant does not bear the burden to establish such harmful error. Schutz v. State, 63 S.W. 3d 442, 444 (Tex. Crim. App. 2001); Johnson v. State, 43 S.W. 3d 1, 4 (Tex. Crim. App. 2001).

Rather, it is the responsibility of the appellate court to assess harm after reviewing the record. Schutz v. State, 63 S.W. 3d 442, 444 (Tex. Crim. App 2001). Johnson v. State, 43 S.W. 3d 1, 4 (Tex. Crim App. 2001).

Here, Bledsoe was convicted of a State jail felony and recieved (20) year. (C.R. Ps. 224).

(Page 25)

However, Bledsoe should have faced a State Jail felony conviction and a potential Punishment range of confinement in a State Jail for any term of not more than two years or less than 180 days.

Accordingly, Bledsoe's State Jail felony conviction and his (20) Year Sentence was outside the appropriate Punishment range and was harmful error.

# ISSUE NUMBER TWO

"Insufficiently of the Evidence gained
Pursuant to an unconstitutial Search and
Seizure (where the state has not Provided
a full and fair hearing on the merit of the
Fourth Amendment Claim's

The Trial court err in denying the defendant's
motion to suppress evidence recovered from
Room 108 of motel 6. (2 RR 43-144)

## SUMMARY OF ARGUMENT

The Consent form's and the Affidavit for
Search warrant's was Illegal and unConstitutial
That was Provided by the State at Trial.
Because both Claim's based upon the Fourth Amendment
Appellant will argue both the Consent form's
And the Affidavit's for search warrant's together.

The unfiled Consent form's and the unfiled
Affidavit for Search warrant's that was alleged
to be used to Search Room 108 of motel 6
was unconstitutial and in violation of the
fourth Amendment and the Law's enacted by
the Legislature under the Code of Criminal
Procedure and the Texas Rules of Evidence.

## STATE'S EXHIBIT v.7of7 RR

The unfiled consent form's that was amitted
by the State as States Exhibit 2 that was alleged
used to conduct the search of Room 108 violated
the Texas Rules of Evidence 902 (2) (4) 1001 a 1003
1002 1005. 901 (a) (1) (9) 001 4th Amendment 14th Amendment
There were Numberous question asked concerning the
validity of the Consent's form's.

(Page 27)

# STATEMENT OF FACTS
## SUPPRESSION HEARING V.7 OE7

### JAMIE Bledsoe : DIRECT EXAMINATION

Q Do you remember this document, sir? V2 RR 41-42

A Yes, I remember it.

Q What do You remember about this document specifically?

A Nothing but the signature that is it.

Q At the time that you signed it" was it filled out?

A NO, it wasn't.

Q At the time that you signed it did you know what you were signing for?

A. This Particular document that I signed right here seemed to be the one that I signed for DNA on September the 14th 2012 NOT July 23rd 2012

Q. Why do you think that?

A. Because I signed a Consent for the DNA on September the 14th 2012

Q Are you doubting that that is Your signature?

A. That is my signature.

Q Since you referenced giving written Consent for your DNA On September the 14th, 2012 was that document filled out at that time when you signed it?

A NO, it wasn't filled out either. It was just a document saying the Consent for that DNA I signed.

Q. Was it ever explained to you at the time of your signature what you were signing?

A For the DNA, Yes, but not this Particular one that Says July 23rd NO. I thought that was for my suite case. that is what I Kept telling him" I wanted out of that room. He told me if I signed this form I would give to you, that was it.

(Page 28)

Q. So you were Giving Permission for the officer to go into the room to retrieve a brief case; is. that correct

A. Brief Case. I told him I had some very important document. in there. I did Not want nobody going through it

DARRUL Griffin: CROSS-EXAMINATION V 2 RR 18-19

Q. Was MR. Bledsoe under the impression that he was--you were going to be searching the room for a shirt and clothing or tools or what was your impression, your understanding?

A. I don't Know what his impression was. I was going to search the room for evidence that he committed a crime.

Q. Do you have any Knowledge Concerning Page two? the other Consent form by the owner Ms Smith.

A. Other than Sergeant Smith had gotten with ms. smith and advised her that once we got through searching the room that she had rented, that she could take control of it and all of his Property that belonged to either him or the other man that was renting the room.

Q. What time do you have on there that he gave Consent
A. 11:20 AM V. 2 RR 24

Q. Defense EXHiBit 4 amitted, Are you familiar with this?
A. That is a Harrison County book-in slip. V. 2 RR 25

Q. Okay, and whose book-in slip is it?
A. MR. Bledsoe.

Q. What time does it notate that he was actually booked
A. 11:00 AM

Q. And concerning Page two of Defendant's EXHibit two Concerning the other Consent form, EXHiBit #2 What time does it say that Ms. smith gave consent?
A. 11:21

Q. Okay, is that one minute after.
A. That is just coincidence V.2 RR 26 1-11

(Page 29)

Q. Did you actually leave a return of inventory with ms. Smith who was on the scene? V-2-RR-30-31

A. I believe we gave it to Mr. Bledsoe.

Q. Okay, and how -- where did you give it to him?

*A. At the county jail, put it with his property along with a brief case that I brought him back that I promised him when I interviewed him that I would bring him.

Q. Okay, As we speak now do you know whether or not Mr Bledsoe was under the impression that you were searching the room for his brief case or searching the room for other items?

Q. Officer Griffin, I am going to show you the interview that you had with Mr. Bledsoe Concerning the consent.

A. Okay.

Q. I don't know if you heard anything Officer Griffin concerning the consent to search, did you hear that?

*A. I told him sign consent, and I would be able to retrieve his brief case and bring it to him. V-2RR31-17

Q. But did you tell him that you would search the room to bring him his brief case. V-2-RR-32-1-10

*A. I told him we were going to search the room and if we found any weapons or anything else there would be other charges. That I would also retrieve his brief case that he asked me to bring him. I told him I would retrieve his brief case if it didn't have any guns or any weapons in it or any narcotics.

Trial on Merit Volume 4 of 7- Page
See Page 31. 32. 33- 34 -35    Testimony Continue on consent

Q. Did you see the Procession, V. 4of7 Page 40 Line 8- 12
A. No, I Left after that
Q. You Left?
A. I had other things that I needed to do, He is an officer that has his Job and I have my Job.

(Page 30)

Q MS Smith, on July 23rd, 2012 did you... were you at motel 6 outside Room 108?

A Yes.

Q. Okay, why were you there?

A. MR. Bledsoe had called and told me that he was in Jail and to go to the room and retrieve his stuff out from the room, That is why I was there.

Q I want to show you this document, ma'am, and on page two of State's EXHibit NO. 2 and ask you if you recognize it?

A Yea I recongnize it now, Yea.

Q Is that your signature on there?

A Yes, that is my signature.

Q. Okay, Do you remember what you were signing for at that time?

\* A. NO, I don't. I was getting his stuff. That is what I was signing for. I was not signing for nothing else.

Q when you signed that document were there officers already in the room?

A well, Looked like they was already in the room, because I was in my car.

Q were you allowed to go inside of the room when you got there in the morning?

A. NO.

Q. why NOT?

A. They said that I had to wait. They were searching it.

Q. They who said that you had to wait?

A well, I talked with Officer Griffin, He was the one that told me.

Q. Were you explained what you were signing before you signed it?

* A. No, I wasn't explained, I was to retrieve his stuff that is what I was out there for.

<u>Sarah Holmes</u>: CROSS-EXAMINATION V-4-77 RR

Q. On September 14, 2012 do you recall visiting the Jail Annex and obtaining swabs from the defendant?

A. I did.

Q. Who was accompanying you when you did that?

A. Sergeant Griffin.

Q. Could you have served that warrant yourself?

A. Yes.

Q. Do you recall Sergeant Griffin handing the defendant a piece of paper and told him to sign it? Do you recall that? <u>V-4-78-RR</u>

A. Yes I do

Q. It was a consent form, right?

A. It was a search warrant.

Q. I sign a search warrant.

A. Yes it was a search warrant <u>V-4-79-RR 80-81</u>

Q. I have never seen that. Are you sure it was a search warrant that he handed me to sign?

A. Yes.

Q. If it was it should be some kind of documentation with that search warrant that I signed?

A. It was not my search warrant.

Q. I have the warrant here, and I have got the document that I signed on the back of the warrant. (see original Exhibit D)

Q. Do you recall this

A. Yes

Q. Now do you see anywhere where the defendant signed the search warrant <u>V-4-81-Line 6-21</u>

(Page 32)

A. I don't know what your signature looks like.

Q. Let me see it. That is sergeant Darrel Griffin right?

A. Yes

Q. This is the Magistrate Judge: Right?

A. Okay. This is my first time to see this piece of paper.

Q. The question I asked you, did you see officer Griffin have the defendant sign a piece of paper?

A. Yes.


LARRY SMITH: CROSS-EXAMINATION    VOLUME 4 OF 7

Q. On July the 23rd, 2012, do you recall being contacted by officer Griffin for help in arresting the defendant? V 4 of 7 Pg 64-7-25

A. I went out to the motel where Sergeant Griffin believed that you were staying.

Q. Did you help him initiate that arrest?

A. No. I was there for support.

Q. After Officer Griffin arrested the defendant do you remember him taking him to Marshall City Police Department?

A. I remember him transporting you to the Police department to be interviewed, yes.

Q. You said in his report that he left you there to secure -- stand by the room until he got back; is that correct?

A. I was there as well as I believe officer Beck was there as well.

Q. And in the information officer Griffin alleged that he shut the door to the room and no one went in that room until officer Griffin got back with that search warrant. V 4 of 7-Pg-65-7-25

A. I believe that is correct. I eventually left. So I could not tell you-- I was not there at the time of the search of the room.

Q. You Left? You were not there? V 4of7 Pg 651-25

A. Not at the time of the search of room. I Left Prior to that.

Q Would it be correct to say that once you shut the door there is no way anybody could have entered that room without going back to the motel manager for that Key: is that Correct?

A. Once the door was shut I know myself and officer Beck maintained the Perimeter no one entered the room at that Point in time.

Q Were you there when Sergeant Griffin Cameback with his affidavit for search warrant? V 4of Pg 66 1-4

A. I can't recall. I believe I was on the scene, but I eventually Left though.

Q You say you did not go in that room at all and help them search?

A. At no time did I step foot in that room Prior to your arrest, during your arrest or after your arrest.

ARMARIE Smith: Direct EXAMINATION   Volume 4of 7 Pg 113-115

Q on July the 23rd of 2012, do you remember the defendant calling you from Harrison County Jail and asking you to go out to motel 6 and retrieve the rest of his Property?

A. Yes

Q and when you got to the motel what do you remember when you walked to that door? V. 4of7 Pg 114

A Yea, there was somebody in there, they told me I couldn't come "inside" so I went back to my car and got in my car and went to sleep.

Q Are you familiar with Sergeant Griffin when you see him?

A I know Sergeant Griffin,

Q was he in that room?

(Page 35)

A. I don't know whether he was in there then, but I know that he was there, you known; because there were a lot of them in and out, but he was the one that told me that I couldn't go into the room.

Q. What about Sergeant Smith? Do you know him?

A. Yea.

Q. Was he in that room? V 4 of 7 Pg 114 Line 22-25

A. Yea, he was in there.

Q. Sergeant Larry Smith, do you know who I am talking about?

A. Yes, I guess that is the one that came to my house.

Q. A Black guy?

A. Yes.

Q. That is Sergeant Larry Smith.

Q. Why were you there? V 2 of 7 Pg 36 Line 25

A. Mr Bledsoe had called and told me that he was in jail and to go to the room and retrieve his stuff out from the room, that is why I was there.

## ANALYSIS

The trial Judge improperly chose to disregard all the evidence on the video tape and the testimony from the state witness, and the defense witness that weighed against the state: evidence that made the state unable to show by clear and convincing evidence that appellate or the owner of the room freely and voluntarily consented to the search.

The video tape showed the appellate repeatly requesting about his brief case and officer Griffin inform him that in order for him to retrieve the brief case that the appellant would have to give him consent. V-2-RR Pg.32-t-10 He then hand the appellant a blank copy of a paper and asked him to sign it.

The Video will show appellant to take the Pen without hesitation, and Signed the Piece of Paper.

The record will Show that what ever the form was it were Never certified as a copy and Put into the Clerk file. V-2-RR P9 14-17-21

The Video will Show after the defendant had Signed the form, Officer Griffin would them talk about if he found Any weapons or drugs in the room there would be other Charges V-2-RR P9-33 Line 13-16 -34 Line 7-11

Soon after it was brought to the attention of the defendant Concerning the Consent by his Lawyer threw discovery month's Later, and the defendant requesting for a suppression hearing, Officer Griffin Showed up at the Jail annex, 2 months Prior with officer Sarah Hodge, whom obtained some Swab's of DNA, and had the defendant to Sign a consent form to Collect the DNA this form would be attacted to the back of the Affidavit for Search warrant that was filed September 14th 2012 [See Orisinal that was Put into Exhibit as Exhibit (6)

\* Officer Hodge, testified that She recall Officer Griffin to hand the appellant the Consent form on September 14th 2012 to Sign" but" She throught it was a Search warrant. See V. 4-78-79-RR

As this Court is aware of" that Suspect's do not Sign Search warrants, only the magistrate Judge's and the affiant.

The consent form that was Signed that day would Not bare a Witness to the Signing because if Officer Hodge had Signed the witness blank, it would have clearly showed the date it was Signed by the defendant. The form also showed a erroneously date of Signing that Contradicts the time that the defendant was interviewed during his initial arrest.

when officer Griffin was question about these fact's in the suppression hearing he said it was a coincidence. (See V. 2-RR-25-26 Line 10)

(Page 38)

The form would only bare his Signature at the top of the form. Once he was question about the fact that if officer Sgt Boyd was there why did he sign officer Boyd signature at the top, and why did not officer Boyd sign as the witness. V-4-RR-Pg-23 Line 16-25-34

ABMarie Smith the owner of the room testified that she recieved a call from the appellant on July 23rd 2012 asking her to go out to the Motel to retrieve his property. V-4 1of7 RR. Pg. 113-115  V-2-RR. Pg. 36-40.

She was asked" when she arrived at the motel what did she remember. She testified that when she walked to the door that officer Griffin stoped her, and adviced her to wait out side because they were searching the room. She testified that she saw Sgt Larry Smith and others in the room at the time.

She testified that after they got threw searching the room Sgt Larry Smith gave her a document to sign in order to take control of the room and to remove the defendant property.

She testified that she did not know what she were signing for at that time and that she were signing for the rest of the property and nothing else. V-2-RR-Pg.37 Line 16-25

## Applicable Standard of Review

Voluntary consent to search is a well-established exception to the warrant and probable cause requirement of the fourth Amendment to the United States Constitution. The federal Constitution requires the State to prove voluntary consent by a preponderance of the evidence.
Under Article I, section 9 of the Texas Constitution, however, the state must prove by clear and convincing evidence that consent was given voluntarily.
The court of appeals held: Giving proper deference to the trial court's determination, we nevertheless conclude that the record of the suppression hearing does not contain clear and convincing evidence to support the trial court's finding that Bledsoe or AMarie smith freely and voluntarily consented to the search.

Consent to search operates as another exception to the Fourth Amendment warrant requirement. See Schneckluth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L. Ed. 2d 854 (1973). State v. Ibarra, 953 S.W. 2d 242, 243 (Tex. Crim. App. 1997).

The consent must be voluntarily given to be considered effective, and voluntariness is a question of fact to be determined from the totality of the circumstances. Carmouche v. State 10 S.W. 3d 323, 331 (Tex. Crim. App. 2000)

The burden of proof is on the state to show by clear and convincing evidence that the consent was freely given. Ibarra, 953 S.3. 2d at 245.

The consent must be Postive and unequivocal, and the police must not have employed any duress, coercion, or scheme tastic.

Among the factors to be considered in determining voluntariness are: whether the consenting Person is in custody, whether he or she was arrested at gun point, and whether the Person was informed that he or she did not have to consent. Id. Other factors include: The youth of the accused, the Constitutional advice given to the accused, the length of the detention, the repetitiveness of the questioning, and the use of Physical Punishment Reasor v. State, 12 S.W. 3d 813, 818 (Tex. Crim. App. 2000).

In a suppression hearing, the trial Judge is the Sole trier of fact and Judge of the credibility of the witnesses, and the weight to be given in their testimony State v. Ballard, 987 S.W. 2d. 889, 891 (Tex. Crim. App. 1999).

Under Texas Law, the state has the burden of proof to show by clear and convincing evidence that the consent to search was freely and voluntarily given. Montanez v. State, 195 S.W. 3d 242 (Tex. Crim. App. 2006).

The search must be limited to those areas to which the defendant actually or implicitly gives Permission to search.

IN Guzman v. State, 955. S.W. 2d 85 (Tex. Crim. APP. 1997), the court determined that when reviewing a trial court decision to deny a motion to suppress, an appellate court "should afford almost total deference to a trial court's determination of the historical facts that the record support, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor.

An appellate court "should afford the same amount of deference to trial court's rulings on application of Law to fact question, also known as "Mixed questions of Law and facts if the resolution of those Ultimate questions turns on an evaluation of credibility and demeanor; finally, an appellate court may conduct a denovo review where the resolution of Mixed questions of Law and fact do not turn on an evaluation of credibility and demeanor.

Appellate assert: because of the deficiency of the alleged consent form; UN filed by the clerk for authentication as required by the Texas rules of evidence 901, the appellant filed a motion TO COMPEL PRODUCTION of filed STAMPED COPY of the Search warrant warrant; Dated July 23, 2012, that was alleged to be accompany with the consent form; Prior to entering the room. (See CR Pg 134)

Appellate assert that the stamped filed Affidavit for Search warrant would have clearly show what time the issuance magistrate issue the warrant; mandated by the Texas code of Criminal Procedure Art 18.01; this stamped filed date would have clearly showed the Validation of the consent form; time that they were alleged to be signed; because the arresting officer testified that he had the search warrant; Both consent form; Signed before he enter the room.
The motion was Not ruled on during the second Pretrial hearing and was Not made a Part of the record.

(Page 99)

# Plain view Doctrine

Officer Griffin Obtained a Affidavit for Search warrant to support his probable cause by alleging that he saw the article of clothing the suspect had on during the burglary Laying on the floor in Plain view when the appellant open the door and was placed under arrest. V. 2-RR-Pg-10-Line 10

Officer Griffin alleged that the shirt was a white Polo shirt with stripes in it V.2-RR-Pg-16-Line 19

Q. And in the affidavit you described it as a white Polo shirt, is that correct? V.2-RR-Pg-17-Line 2

A. yes, Ma'am.

Q. And you also described Room 121 of the motel, is that correct? V-2-RR- Pg-17-Line 5-9

A. yes, Ma'am.

Q. where did that come from?

A. I was Just an error on me part from him going to one motel room to the other. I had 121 on a piece of paper and that is what I put.

Q. Concerning... your testimony about the Plain view, did you say that as he opened the door.. V-2-RR-Pg-19-Line 15-25

A. No, he opened the door.

Q. Excuse me.

A. As soon as he opened the door it is sitting about six feet behind him on the floor.

Q. That is where you saw the shirt?

A. That is where the shirt was Laying, yes, ma'am.

Q. would it be fair to say, officer Griffin, that while you were interviewing Mr. Bledsoe that the room was secure so that you could go ahead and get that search warrant V.2-RR-Pg-20-Line 3-18

A. As soon as he was placed under arrest the door was shut and secured. nobody went in that room until I got a search warrant signed.

(Page 40)

NO:3 The trial court err in denying the defendant's motion to suppress evidence recovered from Room 108 Of Motel 6

## SUMMARY OF THE ARGUMENT

ON July 23, 2012, Officer Darryl Griffin obtained two affidavit for Search warrant, one on the day of July 23rd 2012, and another one on the day of September 14th 2012.

The affidavit's made by Officer Griffin on the 23rd of July 2012, and September 14th 2012.... contained deliberate falsehood with reckless disregard for the truth. The trial court held a suppression hearing and abuse there discretion when it refuse, and deny the motion without a hearing on the fourth Amendment claim.

## STATEMENT OF FACT.

Motion to suppression Volume 2 of 7

Darryl Griffin: CROSS- EXAMINATION

Q. NOW you also provided an affidavit to get the DNA search; is that correct? V-2-R-R-Pg-27-Line 5-25

A. Yes, ma'am.

Q. And Your affidavit also refers to a white Polo Shirt; is that correct?

A. Yes, a white Polo shirt with stripes

Q. IN which room?

A. IN Room 108..

Q. okay.

A. 108 or Room 121.

Q. IN Room 121. Now when was this filed compared to when you did the affidavit to actually search the room?

A. The 14th day of September, 2012.

Q. Close to two months; is that correct?

A. Yes.

Q. And so is there a reason why in that affidavit you were still referring to Room 121 (State Exhibit 4) 7-7

TRIAL ON MERIT V. 4 of 9

DARRYL Griffin: CRoss EXAMINATION

Q. Now you allege in your information to obtain the affidavit of Search warrant as a white Polo Shirt; is that correct? V. 4-R-R- Pg. 23-Line 5-25

A. Yes.

Q. What Color Shirt did you seize from that Place?

A. Polo Shirt with Stripes on it.

Q. What Color was it?

A. Gray or white.

Q. That is two different Shirts listed in the evidence. there is a bluish gray and gray, There is no white?

Q. Now you saw this shirt in plain view am I correct?
A. Yes V-4-R-R- Pg 24 -Line 2-25

Q. Eye to eye with that shirt; is that correct?

A. Yes

Q. Now the Shirt in that description you say is a bluish gray; am I correct?

A. Yes, Sir.

Q. There is an affidavit for search warrant right there in your hand. What Color does it say? V.4-RR-Pg-25- Line 24....

A. White Polo shirt. V.4-RR- Pg-26 Line 1-12

Q. Thank you.

A. In my Search warrant it says that, yes, but it is bluish Gray.

Q. Would you say that you made a mistake?

A. IN the color?

* Q. Yes.

A. Possibly.

Q. You said you did shut the door to that Room: is that correct. V. 4-R-R. Pg-26-Line 13-25

A. Yes.

Q. Defendant's EXhibit 3, Can you describe that. V.4-RR.Pg-36-24

A. That is door 108 Of Motel 6. V.4-RR-Pg-37-Line 1-25

Q. You made a statement that when you left that room you secured and you shut that door, I am Correct?

A. Yes,

Q. Would you Look at that door in the Picture and see if that door is shut? (State. EXHibit 25) V.7of7

* A. Okay, It is Not shut.

Q. Okay, The affidavit to search that you obtained on July the 23rd 2012 would you tell us what room number you have got on there? V.4-RR-Pg-48 Line 3-25

A. It has room 121 (see state. EXHibit 3) 7of7

Q. Okay, would it be correct to say that you made another mistake?

* A. A mistake was made, yes. V. 4-R-R- Pg-48-Line 19

Q. Look at the date of birth of the Defendant.

A. 6-26-65.

Q. making the Defendant, 48 years Old?

Q. Would you say you made another mistake—on the warrant.

* A. I would say that there is a mistake on the warrant yes.

Q. The Constitution on the fourth Amendment requires what? you should know that. V.4-R-R. Pg-53-Line 15-25

A. Yes Sir.

Q. Is it correct that Officer Beck was one of the individuals that was securing that?

A. Officer Beck and Sergeant Smith were the two individuals.

Q. So would it be fair to say that any pictures that Officer Beck took would indicate the room as you left it prior to you getting the search warrant?

A. Yes.                               V-2-RR-Pg-20-Line 15-18

Q. Officer, I would like you to take a look at this picture.

A. Okay.

Q. Does it look familiar to you? V-2-RR-Pg. 21-line1-25

A. I mean it is the motel room.

Q. So you indicated that the shirt is close to the front door? is that what you said.

A. It was on the floor. (see Exhibit 4 Defendant intitind enter

Q. Just to be clear, is the shirt on the floor in the front of door or is the shirt on the floor in back of the room?

A. It is where we can see it from the door. the shirt is on the floor.

Q. Do you see the shirt in that picture? V-2RR-Pg22

A. not in back of the room, NO. ma'am.

face.

The State's Exhibit 24 and the Defendant Exhibit 4 of V-7of 7-RR will clearly show the initial entern of room. Officer Griffin could not show any where there were a white Polo Shirt laying on the floor, in Plain view as he alleged. V-2-RR-Pg-22

(Page 46)

On trial date the arresting officer was impeached about the Plain View allegations that he made to obtain the search warrant IN V 4 of 7 Page 23-26 the arresting officer was asked about the Color of shirt he alleged that he saw in Plain View.

Q Now you allege in your information to obtain the affidavit for Search warrant as a white Polo Shirt with horizontal Stripes, is that Correct? V.4-RR-Pg-23

A. Yes

Q. What Color shirt did you seize from that Place?

A. Polo shirt with Stripes on it.

Q. What Color was it?

A. Gray or white.

Q. That is two different Shirts Listed in the evidence. There is a bluish gray and gray, There is no white?

A. Everybody looks at a different shirt color and calls it a different color, gray, blue Silver.

Q. But Now you allege you saw this shirt in Plain view. V. 4-RR-Pg.24-Line 2-12. Am I Correct?

A. Yes.

Q. Eye to Eye with that Shirt; right?

A. Yes.

Q. You Called it a white Polo shirt; is that Correct?

A. Yes.

Q. Would you say that you made a mistake?

A. in the Color?                    V. 4-RR-Pg.26 Line 3-12

Q. Yes.

A. Possibly.

Bledsoe assert: this false and misleading endeavor was used to support his Probable Cause by erroneously alleging that he saw a white Polo shirt in Plain view that was wore by the suspect.

Officer Beck: Room Processor. Cross examination

Q. Do You recall Putting them clothes there? V.4-RR-Pg 153

A. Yes, because I spread the Pants there so I could take a Picture of the Pants in order to get.. because here you can't see but Just a Portion of those Pants.

Q. what Color is that shirt?

A. This shirt is white. This one is blue and maybe grey. V.4-RR-Pg 153-17-25

Q. So in other words, they were not in the trash bag with that shirt when you got those clothes out; is that correct?

A. I am sorry.

Q. Did they go in that black bag that had that shirt concealed over it, they went in and got those clothes out?

A. I did. I took everything out of the trash bag and Photographed it. Yes. I took everything out of this bag. V-4-RR-Pg 157-17-25

Q. Officer Beck, who all Processed that room?

A. I want to say Sergeant Griffin and Sergeant Scott Smith. V.4-RR-Pg-158-2-22

Bledsoe assert: the testimony made by officer Griffin as seen on V-4-RR-Pg-40 Line 3-13 Contradict: the testimony of Officer Beck, and the owner of the room ms Smith. Officer beck and Ms Amaric Smith Place: officer Griffin in the room while the Search was activated. Officer Griffin alleged that he did not see the Procession because he Left. See V.4-RR-Pg-40 Line 3-13.

(Page 48)

Q. Did you see a bluish shirt in that corner? V.4-RR-Pg45

A. Okay, This is the first picture that he had taken.

The Court: officer, you need to answer the question.

* A. No. I do not see a shirt in the corner.

Q. Okay, Now these pictures do not have a date, they do not have a time on them and how do you put these in an array?

A. You are asking the wrong person. I did not take the pictures. V.4. RR. Pg 46

Q. But then still we go back to the Exhibit No 1 on the initial entry and we don't see anything on that floor are the corner when we first walk through that door. You are telling me that the officer can go in that black bag, take clothes out of there and threw them in a array that he wants to take a picture and come back and take another picture of some more clothes but only this time it is a bluish grey shirt pops up in that corner where the other clothes are at?

LARRY Smith Cross examination

Q. when you process do you move any of the evidence that you exhibit or do you take a picture of where it is at? V.4-RR. Pg-68-Line 7-25

A. The thought is to take a picture of where everything originally is at.

Q. You don't suppose to move it, do you?

A. If at all possible, No.

Q. I understand you said that if you make a notation, but what if you don't make no notation? V.4, RR-Pg-69-7-13

A. Then that would be a mistake on the officer.

Bledsoe assert that the State's exhibits and the defenda exhibits listed as exhibit 1, 2 3 7 25 5 6 will clearly show that Some one removed clothes from the enclose black bag and place them in a array as to validate officer Griffin allergment of plain view

(Page 49)

When the defense asked officer Beck did he see a white Polo shirt Laying there? V.4-RR-Pg 163-Line 1-3:

Officer Beck stated I don't recall where everything was. No, I do not remember.

Officer Griffins testified that he immediately secure a arrest warrant soon after viewing a viedo tape at the Valero Gas station V-3-RR-Pg 135-Line 15-25

Officer Griffin Contended that A day or two Later. he Got a Call from the motel owner at motel 6 Letting him Know that Mr. Bledsoe was in Room 108 at this time

Bledsoe assert, that the State Exhibit that was offered as No. 1. Description arrest warrant Offered 8, Amitted 8 use H vol 2 of the Exhibit Index Listed as volume 7 of 7 will Clearly show a arrest warrant dated and signed July 17th 2012.

The record in Bledsoe case will Clearly show that he was arrested July 23rd 2012 without any warrant that was Produced, this would be (6) days after the arrest warrant was Signed.

Bledsoe assert that in order to validate this warrantless arrest, Officer Griffin made false allegations that during His arrest of Mr. Bledsoe and while securing the room while inside the room he notice a article of Clothing that the suspect had on Laying on the floor.
(See V-3-RR-Pg 136-Line 14-19

Bledsoe assert that in other testimony during the motion for suppression hearing officer Griffin Alleged that as soon as Bledsoe open the door he could see it about six feet behind him on the floor. see V-2-RR-Pg-19-Line 15-23

The record will show this Probable Cause alleged a white Polo Style Shirt, Not a bluish Grey Shirt.

Bledsoe assert that officer Griffin Continue to alleged that he saw a white Polo Shirt where he could see it from the door. (See V. 2-R-R. Pg.-21-Line-17-19-20

(Page 48)

# Tainment of Evidence

The evidence will show that once officer Griffin and his team done there unlawful search of Room 108, he then secured a affidavit for search of Room 121, due to the fact he were not sure what room the appellant was in.

Officer Griffins testified to the facts above at the suppression hearing. (See Volume 2 of 7 Page 17 line 9-12)

Q. And you also described Room 121 of the motel is that correct.

A. Yes ma'am.

Q. Where did that come from?

* A. It was just an error on my part from him going to one motel Room to the other. I had 121 on a piece of paper and that's what I put.

The defendant exhibit no. 7 of R.R. Volume 7 of 7 that was omitted by the state concerning the photo of Room 108 will clearly show that some one place the blush Grey shirt behind the dresser

In defendant exhibit No 7 you will now see a display of cloths that was taken out of a Black back and layed out in order to validate plain view.

Defendant's exhibit No 7 that show the initial entrance of Room 108 will clearly show there were no cloths laying at the edge of the dresser as shown by defendant exhibit no 7

Defendant's exhibit no 2 will now show where some one has now placed something white in plain view that can be seen from the door way as alleged by officer Griffin to validate probable cause.

Defendant exhibit No3 will show where some one has now pushed some more cloths in the same cornor of the dresser but this time the bluish Grey Shirt that was allowed to be admitted into evidence has now appeared

(Page ~~~~ ) 49

ON March 28th 2014, the defendant filed a motion for additional discovery to validate what room was the bluish grey shirt seized from. (See CR Pg 118).

ON July 9th 2013 the defendant filed a mandamus in the Sixth Court of appeal seeking the file date of the Affidavit for search warrant (See CR Pg 98).

ON May 13th 2014, the defendant filed a motion to compel Production of filed stamped copy of the search warrant that was alleged for room 108. (See CR Pg 134)

The stamped filed affidavit for search warrant would have clearly showed at what time the search of room 108 would have been.

The Inventory return that was filed showed a time of filing of 3:45 Pm, this time contradicted the time that was alleged of the search of room 108 (see State Exhibit 42)

Bledsoe assert: the inventory AND return search warrant filed on July 23rd 2012 fail to show any of the items to seized that was listed in the affidavit for search.

Bledsoe assert: he question officer Griffin On Cross examination about the clothi that was Placed into the coroner of the dresser that were not there during the initial Photo of the room.

Officer Griffin: Cross examination Volume 4 of 9 Pg 44-47

Q. Okay, I will ask you this question, Officer Griffin, do it make any sense for somebody to take a set of blue Jeans, boxers and shirt out of a bag and throw them into a Cornor, then Come right back and Put some more clothi there V-4-RR-Pg 44-Line

A. He did not Put anything in that Corner.

Q. That is what you Just said.

A. NO, I didn't.

(Page 50)

The officer must establish Probable Cause to believe the crime has been Committed and that evidence is likely to be found at the Place to be searched; must articulate specific items that can be seized, and a specific Place to be searched; must obtain the warrant from a magistrate Judge; and must instruct a search team to execute the warrant within the time allowed by the warrant.

The officer must also oversee the execution of the warrant in a way that protects officer safety, directs a thorough and professional search for the evidence, and avoids unnecessary destruction of Property.

The record will show by the testimony of the officer whom alleged that he obtained the search warrant, and executed it that he was not there to oversee the execution of the search warrant.

Officer Griffin testified that he did not help Process the room. See V-4-RR-Pg-40 line 3-13. He testified that he left and did not even see the Processing.

Bledsoe assert, that the warrant's in this case that was unfiled on July 23rd 2012, and the second one that was filed on September 14th 2012 was "so Obviously deficient" that the ensuing search must be regarded as a warrantless search and thus Presumptively unreasonable.

Bledsoe assert, that the warrant in this case were not clerical error's, nor was there honest mistakes by the affiant.

The record accompanied by the statements of facts will clearly show there was a arrest of the defendant based upon a cursory assertion, and bare-bone allegation's for the Probable Cause based upon a assumption that a suspect at a crime scene look liked the defendant.

(Page 53)

The record and the statement of facts threw all of the testimony at trial Proved that Officer Griffin were very aware of the illegal search of room 108 of motel 6.

The record show there were (3) Affidavit for Search warrant's that was secured by Officer Griffin, two warrant's (2) for Room 121, another for Room 108 both unfiled by the affiant as required by the Code of Procedure article 18.01. (b)

These warrants was not filed due to Officer Griffin Knowledge of their entry into the room without any consent or a warrant, the record will show when Ms Amarie Smith drove up on the officer already in site the room Officer Griffin then had to try to validate his Search of Room 108. V-2-R-R-Pg 36,37,38

Bledsoe asserts the fact that Officer Griffin obtained a warrant for Room 121 and Room 108 will clearly show there was not any clerical error, or any error Concerning his information in his computer.

The fact. is that the DNA Profile was consistent with a mixture of the defendant, and at least one unknown female as listed in State, Exhibit 48 will clearly Proved that the bluish grey shirt that was admitted into evidence came out of Room 121 of motel 6 where the defendant was visiting from time to time.

Officer Griffin testimony at V-2-R-R-Pg.17-Line 9-13 will clearly show that he was aware that the defendant was visiting some one in Room 121 and that is the true reason he obtained the warrant for Room 121.

* The facts is Provided by the Affidavit for Search warrant that was filed on September 14th 2012, by officer Griffin's statement's made in the body of the warrant "that he executed the said warrant at room 121, and that is where he seized the shirt. (State Exhibit 4) R-R.7&7

(Page 52)

## C. THE EXCLUSIONARY RULE

The frequent result of unconstitutional actions by Law enforcement is the imposition of a Judicially created remedy - banning the use of evidence gathered under such circumstances called suppression.

The exclusionary Rule mandates that all evidence obtained by Searches and Seizures violative of the rights of an accused are inadmissible against that Person in a subsequent trial.

The rule is Premised on the notion that if Private, Constitutionally Protected areas can be searched, and items taken unlawfully are used to obtain a conviction, the Protections of the Fourth Amendment are of little, if any, value. the exclusionary rule is in essence an enforcement mechanism, serving to give teeth to Constitutional guarantees.

The rule bars the use of all forms of illegally obtained evidence.

Physical evidence as well as statements are subject to suppression.

The exclusionary rule applies not only to the illegally obtained evidence itself, but also bars the use of evidence derived from the initially obtained illegal evidence.

The evidence in this case will clearly show the exclusionary Rule was violated in this cause, for this reason the State err in denying the defendant motion to suppress.

## A. The Search Warrant

The Fourth Amendment requires that a search warrant be issued by a magistrate or judge who must, after receiving an oath or affirmation from the warrant applicant, make an independent, neutral and detached determination whether Probable Cause exists to believe that Particularly described Property will be found at a Particular Place.

When applying for a warrant, an officer must present an affidavit that contains facts that support a finding of "Probable Cause." The warrant and the affidavit or testimony on which it is based must be Legally sufficient, ie they must contained facts that show a Crime was committed, and facts that indicate why evidence will be found in a given Place.

Cursory assertions and bare-bones allegation will Not Support a warrant. Franks v. Delaware, 438 U.S. 154 (1978); Harris v. State, 227 S.W. 3d 83 (Tex. Crim. App. 2007).

## B. Particularity Requirement.

The Fourth Amendment requires that a warrant Specifically Name both the Places to be searched and the items to be Seized.

The Purpose of this Particularity requirement is to Prevent general searches. i.e., a rummaging for incriminating evidence without cause.

The warrant must State the items and the Places with distinctiveness, so that the officer executing the warrant will have NO Question, and no room for guesswork or discretionary choices, as to where he or she is to Search, and for what they are Looking.

The Particularity Requirement has two Prongs: (i) a Particularly described Place, and (ii) Particularly described items.

(Page ~~55~~) 54

Q. The Particular Place to be searched. the Particular "Item to be Seized, and the Particular Person to be Seized", am I Correct?

A. It is to have Probable Cause, to have the item that I am looking for and where, Yes.

Q. I am right on all three of them of what I Just Said; Correct?

A. Yes, Sir.

Q. And on that affidavit you did not get any of them Correct? Right. V.4-R-R-Pg.54-Line 1-22.

A. NO

## ARGUMENT AND AUTHORITIES

"A trial Court's decision on a motion to suppress evidence is reviewed by applying a bifurcated standard of review". Carcaves v. State, 307 S.W.3d 483, 489 (Tex. APP.-Texarkana 2010. Pet. ref'd) Citing Rogers v. State, 291 S.W. 3d 148, 151 (Tex. APP-Texarkana 2009. Pet. ref'd).

"Because the trial Court is the exclusive trier of fact and Judge of witness Credibility at a suppression hearing, almost total deference is afforded to its determination of facts supported by the record." Young v. State, 420 S.W. 3d 139, 141 (Tex. Crim. APP. 2010-Texarkana 2012. NO Pet.) Citing State v. Ross, 32 S.W. 3d 853, 856-57 (Tex. Crim. APP. 2000; Carmouche v. State, 10 S.W. 3d 323, 327 (Tex. Crim. APP. 2000); Guzman v. State, 955 S.W. 2d 85, 89 (Tex. Crim. APP. 1997).

The "Same deference to a trial Court's rulings on mixed questions of law and fact is afforded if the resolution of those questions turns on an evaluation of credibility and/or demeanor. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. APP. 1996).

Bledsoe asserts the warrants was Plainly invalid. The Fourth Amendment states unambiguously that "No warrant shall issue, but upon Probable Cause, supported by Oath or affirmation. and Particularly describing the Place to be Searched, and the Persons or things to be Seized".

The warrants in this Case Complied with the first of these requirements: It was based on Probable Cause and supported by a sworn affidavit, On the other Particularly requirements, however, the warrants failed altogether.

The fact that the application adequately described Some "things to be Seized" does not save the warrant from its facial invalidity.

The Fourth Amendment by its terms requires Particularity in the warrant, Not in the supporting documents. See Massachusetts v. Sheppard, 468 U.S. 981, 988, n. 5 (1984)

(" The Fourth Amendment requires that the warrant Particularly describe the things to be Seized, ▓▓▓▓

"The Presence of a search warrant serves a high function." McDonald v. United States, 335 U.S. 451, 455 (1948), and that high function is not necessarily vindicated when Some other document, Somewhere, Say, Something about the Objects of the Search but the Contents of that document are neither Known to the Person whose home is being searched Nor available for their inspection.

Given that the Particularity requirement is set forth in the text of the Constitution, no reasonable officer Could believe that a warrant that Plainly did not Comply with that requirement was valid. See Harlow v. Fitzgerald, 457 U.S. 800, 818-819 (1982).

A Law enforcement officer Charged with leading a team to execute a Search warrant must fulfill a number of serious responsibilities.

Bledsoe asserts the fourth Amendment to the united states constitution is the Part of the Bill of Rights which guards against unreasonable searches and seizures. It was ratified as a response to the abuse of the writ of assitance, which is a type of general search warrant, In the American Revolution.

The amendment specifically requires Search and arrest warrants be Judicially Sanctioned and supported by Probable Cause.

Search and arrest should be limited in scope according to specific information supplied to the issuing court, usually by a law enforcement officer, who has sworn by it

In Mapp v. ohio, 367 U.S. 643 (1961, the Supreme court ruled that the fourth Amendment applies to the states by way of the Due Process clause of the Fourteenth Amendment

The Supreme court has also ruled that Certain Searches and seizures violated the Fourth Amendment even when a warrant was Properly granted.

Bledsoe asserts the evidence at trial and the Statement of facts will clearly show that the bluish Gray shirt that was used for evidence was tainted and should have been ruled as fruits of the Posion tree.

Officer Griffin by his own testimony, and sworn affidaviti for Search warrant Showed by a PrePonderant of the evidence that he Served the warrant on Room 121 and that's where he Seized the bluish Gray Shirt he used to secure his warrant. (See State's EXHiBit 3 R.R. 7 of 7) (Warrant Unfiled for July 23rd 2012)

The (State's EXHiBit 4) 7 of 7 will clearly show for the affidavit for Search filed September 14th 2012 two months Later in the body of the warrant that he executed the said search warrant at room 121 of motel 6 and Seized the white Polo Shirt and forward it to the Garland Lab for testing.

Bledsoe Content. that the Search in this Case was the Product at Worst of a lack of due Care, and taintment of evidence.

The Exhibit's that was Produce by the State and the defendant will Clearly Provide taintment. Concerning the bluish Grey Shirt admitted by the State

State's Exhibit No: 24-RR-V-7 will Clearly show the initial entrance of Room 108, the exhibit will Clearly show there is NO Shirt Laying on the floor or any Clothing visual at the first of the dresser.

Defendant's Exhibit No: 5-RR-V-7 will Clearly show a black bag with a shirt over it. the State omitted this exhibit.

State's Exhibit No: 25-RR-V-7 will now show that Someone enter the bag, the Shirt that was over the bag is now gone and Some one has now Placed Cloth's at the foot of the Dresser.

Defendant's Exhibit No: 7-RR-V-7 that was omitted by the State will now show where Some one has Placed a white Polo shirt in the back of the dresser and a Pair of Blue Jean's is now Laying at the first of the dresser.

State's Exhibit No: 27 and Defendant's Exhibit No: 3 will show that Some one has now Placed the bluish Grey shirt in the Place where the white Shirt was at.

The fact of this Case is that the officer whom initiate the Affidavit for Search filed September 14th 2012 by his own testimony under Oath that he executed the Warrant's Obtained on July 23rd 2012 on Room 121 and that is where he obtained the Shirt.

for all the reasons as Stated about by supporting document will Clearly show the Court err in denying the Mottion to Suppress evidence obtained by the officer.

(Page 58)

# PRAYER

WHEREFORE, Premises Considered, Jamie Lee Bledsoe, respectfully requests that this Conviction and Sentence be reversed and Judgment render in his favor that the Sentence be reversed and a new trial granted, that the Case be remanded for a new Punishment hearing based upon a state Jail felony range, or for such other and further relief to which Appellant may be entitled.

Respectfully Submitted,
Jamie Lee Bledsoe

## Certificate of Service

I, Jamie Lee Bledsoe, hereby Certify under the Penalty of Perjury that a true and correct Copy of the Appellant Pro Brief has been Provided to Clerk: DEBRA K. AUTREY at 100 NORTH STATE LINE AVENUE # 20 TEXARKANA, TEXAS 75501, by Placing said document in a Postage-Paid envelope and mailing said envelope via United States mail this 24 day of February 2015.

Jamie Lee Bledsoe